# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY (NEWARK VICINAGE)

| | |
|---|---|
| RICHARD REBISZ,<br><br>                    Plaintiff,<br><br>v.<br><br>KRYSTYNA REBISZ,<br><br>CHESTER J. BEDNARZ,<br><br>CHRISTOPHER W. REBISZ,<br><br>PTL. MALEK A. BADEER, (Individually and in his official capacity),<br><br>PTL. VIDAL, (First Name Unknown, Individually and in his/her official capacity),<br><br>PTL. TOBJY, (First Name Unknown, Individually and in his/her official capacity),<br><br>PTL. BRESSEL, (First Name Unknown, Individually and in his/her official capacity),<br><br>OFFICER JOEL MUNIZ, (Individually and in his official capacity),<br><br>CITY OF CLIFTON,<br><br>CLIFTON POLICE DEPARTMENT,<br><br>HONORABLE RONDA L. CASSON COTRONEO, J.S.C., (Sued for Declaratory and Injunctive Relief),<br><br>JUDICIAL OFFICER JAMES SIERADZKI, (Sued for Declaratory and Injunctive Relief),<br><br>JOHN DOE SUPERVISORS 1-5, (Fictitious names for supervising officers of the Clifton Police Department),<br><br>JOHN DOE OFFICERS 6-10, (Fictitious names for other involved officers, including Ptl. Juliano and Officer DeGroot)<br>                              Defendants. | Case No.: _____<br><br><br>Civil Rights Complaint<br><br><br><br>Demand For Trial By Jury |

1

## I. DEMAND FOR TRIAL BY JURY

1. Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38, Plaintiff Richard Rebisz hereby demands a trial by a jury of his peers on all claims and issues so triable in this action.

## II. PRELIMINARY STATEMENT: THE STATE-SPONSORED ANNIHILATION OF A LIFE

2. This is a case about the total and complete failure of the American system of justice and the perversion of its sacred duty to protect the innocent. This action seeks compensatory and punitive damages in an amount believed to be no less than Five Hundred Million Dollars ($500,000,000.00) for the systematic, state-sponsored annihilation of the life, liberty, property, and dignity of Plaintiff Richard Rebisz, a 70-year-old citizen who, at all relevant times, was engaged in a debilitating battle with cancer.

3. This Complaint chronicles a descent into a legal nightmare, a Kafkaesque ordeal initiated by a violent private assault, which was then willfully adopted, unconstitutionally amplified, and maliciously weaponized by officers of the Clifton Police Department acting under color of state law. These state actors did not merely fail in their duties; they actively participated in the persecution of a vulnerable victim.

4. The Defendant Officers, through a combination of willful blindness, gross incompetence that shocks the conscience, and a deliberate indifference to the constitutional rights of the Plaintiff, transformed the true victim into the accused. This initial, unconstitutional act of false arrest was the poison pill that infected every subsequent stage of the legal process. It foreseeably and inexorably led to two separate malicious prosecutions, certified by a judicial officer who abdicated his neutral role, and culminated in a deeply flawed judicial proceeding that made a mockery of due process.

5. In that final proceeding, a Superior Court Judge, relying on the fraudulent foundation laid by the other state actors, issued orders that stripped Plaintiff of his home, his property, and his last vestiges of security, completing the catastrophic destruction of his life and rendering him homeless.

6. This lawsuit seeks to peel back the layers of this profound injustice and hold every single actor accountable for their specific role in this unconscionable destruction. It targets the private citizens who wove the initial web of lies; the police officers who gave that web the strength of steel with the authority of the state; the judicial officers who certified the fraudulent charges; and the municipality whose unconstitutional policies and customs of inaction and inadequate training created the fertile ground for such a gross abuse of power to flourish.

## III. JURISDICTION AND VENUE

7. Federal Question Jurisdiction: This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4), as Plaintiff's claims arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and seek redress for the deprivation, under color of state law, of rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution.

8. Supplemental Jurisdiction: This Court has supplemental jurisdiction over the related state-law tort claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy, arising from a common nucleus of operative facts.

9. Venue: Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2), as the situs of the injury and a substantial part of the events, omissions, and conspiracies giving rise to the claims occurred in Clifton, Passaic County, New Jersey, which lies within this judicial district.

## IV. THE PARTIES

7. Plaintiff Richard Rebisz is a citizen of the United States and, at all relevant times, was a resident of Clifton, New Jersey. He is the victim of the assault, the two false arrests, the two malicious prosecutions, and the subsequent unconstitutional deprivation of his property and dignity that lie at the heart of this Complaint.

8. Defendant Krystyna Rebisz is an individual who committed the initial battery against Plaintiff and then, with malice aforethought, initiated and willfully participated in a conspiracy with state actors to deprive Plaintiff of his constitutional rights by providing knowingly false and misleading statements to law enforcement and the courts.

9. Defendants Ptl. Malek A. Badeer, Ptl. Vidal, Ptl. Tobjy, Ptl. Bressel, and Officer Joel Muniz (the "Defendant Officers") are law enforcement officers employed by the Clifton Police Department. At all relevant times, they were acting under color of state law and are sued in their individual capacities for punitive damages and in their official capacities as a suit against the City of Clifton. Their actions, including conducting sham investigations and swearing out fraudulent criminal complaints, were the engine of the constitutional violations suffered by Plaintiff.

10. Defendant City of Clifton is a municipal corporation organized under the laws of New Jersey. It is responsible for the operation of the Clifton Police Department and is liable for the constitutional violations caused by its official policies, customs, and failures to train, supervise, and discipline its officers in matters of constitutional law, which demonstrated a deliberate indifference to the rights of citizens like the Plaintiff.

3

11. Defendant Clifton Police Department is an agency of the City of Clifton and is the department that employed, trained, and supervised the Defendant Officers.

12. Defendants Chester J. Bednarz and Christopher W. Rebisz are individual citizens who willfully and knowingly participated in the conspiracy to deprive Plaintiff of his rights by providing false corroborating statements to the Defendant Officers, thereby furthering the unlawful goal of having Plaintiff falsely arrested and maliciously prosecuted.

13. Defendant Honorable Ronda L. Casson Cotroneo, J.S.C. was, at all relevant times, a Judge of the Superior Court of New Jersey. She is sued in her individual capacity for compensatory and punitive damages for her actions which deprived Plaintiff of his constitutional rights. Plaintiff asserts that Defendant Judge Cotroneo is not entitled to judicial immunity because her actions were taken either (a) in the clear absence of all jurisdiction, or (b) as a co-conspirator in a malicious scheme to deprive Plaintiff of his property and liberty, thereby shedding her judicial role and acting as a private individual. She is also sued for the purpose of seeking declaratory and injunctive relief.

14. Defendant Judicial Officer James Sieradzki was, upon information and belief, a judicial officer for the Clifton Municipal Court. He abandoned his neutral role and acted as a "rubber stamp" for the police, certifying two separate criminal complaints that were facially devoid of credible probable cause. He is named as a Defendant for the limited purpose of seeking declaratory relief related to his role in facilitating the malicious prosecutions of the Plaintiff.

15. Defendants John Doe Supervisors 1-5 and John Doe Officers 6-10 are the fictitious names for other individuals, including but not limited to Ptl. Juliano (who served the TRO) and Officer DeGroot (who served the FRO), whose identities are not yet fully known but who participated in, supervised, or ratified the unconstitutional conduct alleged herein.

## V. COMPREHENSIVE FACTUAL ALLEGATIONS

### A. The Sanctuary: A Life of Diligence and a Fight for Survival

16. At all relevant times, Plaintiff Richard Rebisz, age 70, was engaged in an arduous and physically debilitating battle against cancer. His ongoing treatments left him in a constant state of fatigue, with compromised physical strength, cognitive fog, and a fragile immune system.

17. His home at 173 Rowland Ave, which he co-owned, was the product of a lifetime of labor. It was not merely a house; it was his sanctuary, his place of healing, the cornerstone of his security, and the sole bastion of peace in his later years.

## B. The Assault and the Conspiracy's Genesis

18. On the afternoon of July 28, 2024, Plaintiff, acting as a responsible property co-owner, observed Defendant Bednarz performing unlicensed and dangerous electrical work at the behest of Defendant K. Rebisz.

19. Plaintiff calmly and lawfully approached Defendant K. Rebisz to discuss the grave safety risks. In response to this reasonable inquiry, Defendant K. Rebisz exploded into an unprovoked rage and, without warning or justification, violently struck the physically frail Plaintiff in the head with a closed fist.

20. Reeling from the blow, Plaintiff immediately appealed to the only witnesses, Defendants Bednarz and C. Rebisz, exclaiming that they had just witnessed the battery. They instantly and collusively denied seeing the assault, thereby forming a nascent conspiracy to obstruct justice and frame the victim. Trusting in the system, Plaintiff retreated to the safety of his apartment and called 911.

## C. The State's Unconstitutional Intervention and the First False Arrest

21. The arrival of Defendant Officers Badeer, Vidal, Tobjy, and Bressel marked the point where a private tort was transformed into a state-sponsored constitutional crisis. Their "investigation" was a deliberate charade designed not to find the truth, but to manufacture a culprit.

22. The Defendant Officers immediately and without basis adopted the conspirators' narrative, treating Plaintiff with suspicion and his attacker with deference. They willfully disregarded plainly exculpatory evidence, including Plaintiff's vulnerable physical state, his credible and consistent account of being the victim, and the sheer implausibility of him being the aggressor. They did not investigate; they ratified a lie.

23. Based entirely on this constitutionally bankrupt investigation, and therefore utterly lacking probable cause, the Defendant Officers wrongfully arrested Plaintiff for Simple Assault, subjecting him to the terror and humiliation of being treated like a criminal in his own home.

## D. The Weaponization of the Law: The First Malicious Prosecution

24. To memorialize their unconstitutional seizure, on July 28, 2024, Defendant Officer Malek Badeer weaponized the legal process by signing and certifying a fraudulent criminal Complaint-Summons (No. 1602 S 2024 000730) against Plaintiff.

25. This complaint contained known falsehoods, alleging that Plaintiff committed assault "by striking the victim in the left side of her face with an open hand causing a visible sign of injury." It further certified that probable cause was based on "Officers observations and

5

investigation," an investigation that was a sham, and falsely claimed the "Victim sustained an injury to the left side of her face," an injury for which there was no credible evidence.

26. Defendant Judicial Officer James Sieradzki then co-signed and certified this complaint, abdicating his duty as a neutral magistrate and acting as a rubber stamp for the police. He found probable cause where none existed, thereby lending judicial authority to a fraudulent instrument and formally initiating the malicious prosecution of Plaintiff.

27. This malicious prosecution hung over Plaintiff's head for nearly a year, causing immense stress and legal expense, until July 17, 2025, when the case was dismissed for lack of prosecution, a termination favorable to the Plaintiff.

**E. The Nightmare Compounded: The Second False Arrest and Malicious Prosecution**

28. Based on the initial false arrest, the officers facilitated Defendant K. Rebisz in obtaining a Temporary Restraining Order (TRO) against Plaintiff.

29. On July 29, 2024, Defendant Officer Joel Muniz responded to 173 Rowland Ave and arrested Plaintiff for allegedly violating the TRO, an order that was itself the fruit of the poisonous tree.

30. Officer Muniz then signed and certified a second fraudulent criminal Complaint-Warrant (No. 1602 W 2024 000732), initiating a second malicious prosecution against Plaintiff.

31. Defendant Judicial Officer James Sieradzki again co-signed and certified this complaint, once more finding probable cause without a sufficient constitutional basis and perpetuating the legal assault on Plaintiff.

32. This second malicious prosecution also continued until July 17, 2025, when it was dismissed for lack of prosecution, another termination favorable to the Plaintiff.

**F. The Judicial Farce and the Annihilation of a Life**

33. The fraudulent evidence manufactured by the Defendant Officers and certified by Defendant Sieradzki formed the poisoned well from which the domestic violence hearing on November 18, 2024, was drawn.

34. The hearing, presided over by Defendant Judge Ronda L. Casson Cotroneo, made a mockery of due process. Plaintiff, appearing pro se and suffering from his medical condition, was denied his fundamental rights.

35. Defendant Judge Cotroneo denied Plaintiff's request for a continuance to obtain counsel, failed to accommodate his medical condition, improperly restricted his cross-examination

of Defendant K. Rebisz, improperly excluded relevant evidence, and created a hostile and intimidating environment.

36. Defendant Judge Cotroneo willfully overlooked and ignored the known truth of the matter, including admissions and glaring inconsistencies in Defendant K. Rebisz's testimony. Her actions were not the product of judicial error but were the result of her joining the pre-existing conspiracy with the other Defendants, adopting their goal of stripping Plaintiff of his home and property. Further, she acted in the clear absence of all jurisdiction by willfully exceeding the limited statutory jurisdiction of a summary domestic violence proceeding. She transformed the hearing from one intended for immediate protection into a proceeding that functionally adjudicated complex property rights and imposed financial sanctions that are reserved for a final divorce decree, matters over which she had no authority in that summary context.

37. The FRO, a direct and foreseeable result of the entire chain of unconstitutional conduct and Defendant Judge Cotroneo's conspiratorial and extra-jurisdictional acts, rendered Plaintiff homeless by granting exclusive possession of his home to Defendant K. Rebisz. It further ordered Plaintiff to pay Defendant K. Rebisz's counsel fees, completing the state-sponsored seizure of his property and destruction of his life..

## VI. FEDERAL CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983: VIOLATIONS OF THE FOURTH AND FOURTEENTH AMENDMENTS

#### (Against Defendant Officers and the City of Clifton)

38. Plaintiff incorporates paragraphs 1-37 by reference.

39. Sub-Count A: Unreasonable Seizure (False Arrests). Defendant Officers Badeer and Muniz, acting under color of law, arrested Plaintiff on two separate occasions without probable cause. These seizures were not the result of reasonable mistakes but were the product of sham investigations and a willful disregard for the truth, thereby violating Plaintiff's clearly established Fourth Amendment rights. The officers are not entitled to qualified immunity.

40. Sub-Count B: Malicious Prosecution. The Defendant Officers, in concert with Defendant Sieradzki, initiated and continued two separate criminal proceedings against Plaintiff with malice, evidenced by their fabrication of evidence and reckless disregard for the truth. These proceedings were instituted without probable cause, were terminated in Plaintiff's favor, and caused him to suffer a profound deprivation of liberty, constituting a violation of his Fourth and Fourteenth Amendment rights.

41. Sub-Count C: *Monell* Liability. The City of Clifton is liable for these constitutional torts because they were caused by its official policies and customs, including: (i) a failure to adequately train officers on the constitutional requirements for probable cause, impartial investigations, and identifying the primary aggressor in domestic disputes; (ii) a failure to adequately supervise and discipline officers who engage in unconstitutional conduct, thereby ratifying it; and (iii) a de facto custom of gender bias, presuming the male party to be the aggressor, all of which demonstrated a deliberate indifference to Plaintiff's rights.

## COUNT II – 42 U.S.C. § 1983: CONSPIRACY TO VIOLATE CIVIL RIGHTS
### (Against Defendants K. Rebisz, Bednarz, C. Rebisz, and Defendant Officers)

42. Plaintiff incorporates paragraphs 1-41 by reference. The private Defendants and the Defendant Officers reached a meeting of the minds and entered into a conspiracy to deprive Plaintiff of his constitutional rights. The private actors provided the false story, and the state actors provided the state power to make that story legally effective, with the shared goal of having Plaintiff arrested and prosecuted. All members of the conspiracy are jointly and severally liable for the resulting damages.

## VII. STATE-LAW CAUSES OF ACTION (SUPPLEMENTAL JURISDICTION)

## COUNT III – MALICIOUS PROSECUTION (NEW JERSEY STATE LAW)

### (Against Defendants Krystyna Rebisz, Chester J. Bednarz, Christopher W. Rebisz, and Defendant Officers Badeer and Muniz)

43. Plaintiff incorporates by reference paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44. The Defendants named in this Count, acting both individually and in concert, are liable for the tort of malicious prosecution under the common law of the State of New Jersey for initiating and pursuing two separate, baseless criminal actions against the Plaintiff.

45. The elements for malicious prosecution in New Jersey are: (1) a criminal proceeding was instituted by the defendants against the plaintiff; (2) the action was actuated by malice; (3) there was an absence of probable cause for the proceeding; and (4) the proceeding was terminated favorably to the plaintiff.

46. Element 1: Institution of Proceedings. The Defendants instituted two distinct proceedings:

   a. The Assault Charge (1602 S 2024 000730): Defendants K. Rebisz, Bednarz, and C. Rebisz instituted this proceeding by knowingly providing false, fabricated, and malicious

statements to law enforcement with the specific intent that Plaintiff be prosecuted. Defendant Officer Badeer then formally instituted the proceeding by drafting and signing a fraudulent Complaint-Summons, certifying falsehoods as truth to a judicial officer.

b.  The Contempt Charge (1602 W 2024 000732): This proceeding was a direct and foreseeable consequence of the first. Defendant Officer Muniz formally instituted this proceeding by drafting and signing a Complaint-Warrant based on an underlying TRO that was itself the fruit of the initial unconstitutional conduct.

47. Element 2: Malice. The Defendants acted with profound malice. The private Defendants' malice is evidenced by their calculated conspiracy to frame an innocent man to conceal the battery committed by K. Rebisz and to gain leverage in their personal dispute. The Defendant Officers' malice is established by their reckless and willful disregard for the truth, which constitutes legal malice. They conducted a sham investigation, consciously ignored overwhelming exculpatory evidence (Plaintiff's age, health, and credible victim statement), and deliberately chose to persecute the victim rather than protect him. Their actions were not a mistake; they were a conscious choice to abuse the legal process.

48. Element 3: Absence of Probable Cause. As detailed extensively in the factual allegations, there was a complete and utter absence of probable cause to arrest or prosecute Plaintiff for either charge. No reasonable person, let alone a trained police officer, when confronted with a frail, 70-year-old man in a compromised state of health who claimed to be the victim of an assault, could have found probable cause based on the uncorroborated, self-serving lies of his healthier aggressor.

49. Element 4: Favorable Termination. Both malicious proceedings were terminated in Plaintiff's favor. On or about July 17, 2025, both the Simple Assault charge (Complaint No. 1602 S 2024 000730) and the Contempt charge (Complaint No. 1602 W 2024 000732) were dismissed by the court for lack of prosecution. Under New Jersey law, such a dismissal constitutes a termination favorable to the accused.

50. Damages and Special Grievance. As a direct and proximate result of the Defendants' malicious prosecutions, Plaintiff suffered a "special grievance" of the most extreme nature. He was subjected to the humiliation of being charged as a criminal, forced to endure nearly a year of anxiety and legal proceedings, incurred legal costs, suffered immense reputational harm, and, most catastrophically, the fraudulent charges were used as the basis to obtain an FRO that rendered him homeless. All Defendants in this count are jointly and severally liable for this indivisible harm.

**COUNT IV – FALSE ARREST AND FALSE IMPRISONMENT (NEW JERSEY STATE LAW)**
**(Against Defendant Officers Badeer, Vidal, Tobjy, Bressel, and Muniz)**

51. Plaintiff incorporates by reference paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. The Defendant Officers named in this Count are liable for the torts of false arrest and false imprisonment under the common law of the State of New Jersey for twice seizing and confining the Plaintiff without legal justification.

53. The elements for false imprisonment are: (1) an arrest or detention of the person against his or her will; and (2) the detention was done without proper legal authority or legal justification. False arrest is a form of false imprisonment.

54. Detention Against Will. Plaintiff was detained against his will on two separate occasions:

a.  Arrest on July 28, 2024: Defendant Officers Badeer, Vidal, Tobjy, and Bressel, acting in concert, placed Plaintiff in handcuffs, deprived him of his freedom of movement, confined him in the back of a locked patrol car, and transported him to the Clifton Police Department for processing.

b.  Arrest on July 29, 2024: Defendant Officer Muniz arrested Plaintiff at his residence, again depriving him of his liberty and confining him against his will.

55. Without Legal Justification. Both arrests were executed without legal justification because, as established supra, they were performed without a warrant and without a shred of credible probable cause. An arrest made without probable cause is, by definition, unlawful and without legal authority. The Defendant Officers' sham investigation, their willful blindness to exculpatory evidence, and their reliance on known falsehoods vitiated any claim of legal justification for their actions. They did not act in good faith; they acted as instruments of the private conspirators' malicious plot.

56. Damages. As a direct and proximate result of the Defendant Officers' tortious conduct, Plaintiff suffered the immediate loss of his liberty, physical discomfort, terror, shock, and the profound public humiliation of being arrested and paraded as a criminal in his own neighborhood. These damages form a part of the indivisible harm for which Plaintiff seeks recovery.

## COUNT V – ASSAULT AND BATTERY (NEW JERSEY STATE LAW)
### (Against Defendant Krystyna Rebisz)

57. Plaintiff incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. Defendant Krystyna Rebisz is liable for the torts of assault and battery under the common law of the State of New Jersey. This violent act was the spark that ignited the inferno of damages that followed.

59. Assault. Defendant K. Rebisz committed an assault when she erupted in a rage and moved menacingly toward Plaintiff, causing him, a physically frail cancer patient, to suffer an immediate and reasonable apprehension of an imminent harmful and offensive physical contact.

60. Battery. Defendant K. Rebisz immediately thereafter committed a battery when she intentionally, without provocation, and without consent or justification, made harmful and offensive contact with Plaintiff's person by striking him in the head/temple with a closed fist. This unprovoked physical violence was objectively offensive and caused physical pain, disorientation, and injury.

61. Damages. As a direct and proximate result of this assault and battery, Plaintiff suffered physical pain, dizziness, and severe emotional distress. This initial act of violence was the catalyst for the entire chain of events that followed. Defendant K. Rebisz is liable for all foreseeable damages flowing from her intentional tort, including not only the immediate physical and emotional trauma but also the subsequent false arrest and malicious prosecution that she set in motion with her lies.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) (NEW JERSEY STATE LAW)

**(Against Defendants Krystyna Rebisz, Chester J. Bednarz, Christopher W. Rebisz, and Defendant Officers Badeer, Vidal, Tobjy, Bressel, and Muniz)**

62. Plaintiff incorporates by reference paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. The Defendants named in this Count are liable for the tort of Intentional Infliction of Emotional Distress (IIED).

64. The elements for IIED in New Jersey are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions were a proximate cause of the plaintiff's emotional distress; and (4) the distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

65. Intentional and Reckless Conduct. The private Defendants acted intentionally to frame Plaintiff to conceal their own wrongdoing. The Defendant Officers acted, at a minimum, with extreme recklessness by consciously disregarding the truth and the catastrophic consequences their actions would have on a vulnerable, elderly man with a known serious

medical condition. They knew or should have known their actions would inflict severe distress.

66. Extreme and Outrageous Conduct. The Defendants' collective conduct transcends all possible bounds of decency and is utterly intolerable in a civilized community. The escalating pattern of conduct—violently assaulting a physically frail man, conspiring to frame him for the crime, having state actors ratify the lie with a false arrest, maliciously prosecuting him on two fraudulent complaints, and leveraging that unconstitutional process to render him homeless—is the very definition of extreme and outrageous behavior that shocks the conscience.

67. Proximate Cause and Severe Distress. The Defendants' outrageous conduct is the direct and proximate cause of the severe emotional distress suffered by Plaintiff. This is not mere upset or anxiety; it is a clinically diagnosed state of depression, post-traumatic stress, and a complete shattering of his will to live, brought on by the compounded trauma of being victimized, persecuted, betrayed by the justice system, and having his entire life dismantled. This level of distress is far beyond what any reasonable person could be expected to endure.

## COUNT VII – CIVIL CONSPIRACY (NEW JERSEY STATE LAW)

### (Against Defendants Krystyna Rebisz, Chester J. Bednarz, Christopher W. Rebisz, and Defendant Officers Badeer, Vidal, Tobjy, Bressel, and Muniz)

68. Plaintiff incorporates by reference paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. The Defendants named in this Count are liable for civil conspiracy under the common law of the State of New Jersey.

70. The elements for civil conspiracy are: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or a lawful purpose to be achieved in an unlawful manner; and (4) proof of special damages.

71. Combination and Agreement. The Defendants formed a combination with a common design. The conspiracy began with the express agreement between K. Rebisz, Bednarz, and C. Rebisz to lie about the assault. It was then joined and completed by the Defendant Officers, who implicitly or explicitly agreed to adopt the false narrative and use their state-conferred power to effectuate the common goal: the arrest, prosecution, and ultimate dispossession of the Plaintiff.

72. Unlawful Purpose and Overt Acts. The object of this conspiracy was fundamentally unlawful: to commit malicious prosecution, false imprisonment, and obstruction of

justice. In furtherance of this conspiracy, the Defendants committed numerous overt acts, including: K. Rebisz committing the battery; all three private defendants providing false statements; Defendant Badeer drafting a fraudulent complaint; Defendant Muniz drafting a second fraudulent complaint; and all Defendant Officers participating in the sham investigation and arrests.

73. Special Damages. As a direct and proximate result of this conspiracy, Plaintiff suffered overt and special damages of a catastrophic nature. These damages are not speculative; they are concrete and devastating, including the two false arrests, the two malicious prosecutions, the loss of his home and property, the destruction of his reputation, the legal fees incurred, and the complete annihilation of his peaceful retirement. All co-conspirators are jointly and severally liable for these resulting harms.

## VIII. CAUSES OF ACTION AGAINST JUDICIAL DEFENDANTS

### COUNT VIII – 42 U.S.C. § 1983 – DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

**(Against Defendant Judge Cotroneo in Her Individual Capacity for Monetary Damages)**

74. Plaintiff incorporates by reference paragraphs 1 through 50 of this Complaint as if fully set forth herein.

75. At all relevant times, Defendant Judge Cotroneo was a person acting under color of state law. By her actions described herein, she subjected Plaintiff to the deprivation of rights secured by the Fourth and Fourteenth Amendments to the U.S. Constitution, including the right to be free from unreasonable seizure of his property and the right to procedural and substantive due process.

76. Defendant Judge Cotroneo is liable for monetary damages and is not entitled to absolute judicial immunity because she acted outside the scope of her judicial role under two distinct exceptions:

a. Acts Taken in the Clear Absence of All Jurisdiction: Defendant Judge Cotroneo acted in the clear absence of all jurisdiction when she used a summary FRO hearing, statutorily limited to matters of immediate safety, to effectuate a permanent seizure of Plaintiff's property and adjudicate financial matters reserved for other proceedings. In doing so, she was not acting as a judge making an error, but as an individual engaging in conduct for which she had no plausible claim of authority.

b. Participation in a Conspiracy: Alternatively, Defendant Judge Cotroneo shed her immunity by joining the conspiracy with the private Defendants and Defendant Officers. Her actions on the bench—her biased rulings, her refusal to hear exculpatory evidence, her hostility toward the Plaintiff, and her ultimate ruling which perfectly achieved the

conspirators' goals—were not judicial acts, but were overt acts in furtherance of a malicious conspiracy to deprive Plaintiff of his home and rights.

77. As a direct and proximate result of Defendant Judge Cotroneo's unconstitutional actions, Plaintiff suffered catastrophic damages, including the loss of his home, extreme emotional distress, and financial ruin.

## COUNT IX – DECLARATORY JUDGMENT REGARDING UNCONSTITUTIONAL JUDICIAL ACTS

(Against Defendants Judge Cotroneo and Judicial Officer Sieradzki)

78. Plaintiff incorporates paragraphs 1 through 54 by reference.

79. Defendant Sieradzki, by repeatedly certifying criminal complaints that were facially devoid of credible probable cause, acted as an administrative functionary of the prosecution rather than a neutral judicial officer, thereby acting in the clear absence of all jurisdiction and as a co-conspirator in the malicious prosecution of Plaintiff.

80. Defendant Judge Cotroneo, by presiding over a proceeding that was fundamentally devoid of due process and by acting outside her jurisdiction, directly caused the violation of Plaintiff's constitutional rights.

81. Plaintiff seeks a declaration from this Court that the acts of these judicial defendants were unconstitutional and void. Plaintiff further seeks an injunction vacating the FRO and all orders derivative thereof.

## IX. PLEA FOR RELIEF

WHEREFORE, Plaintiff Richard Rebisz, having suffered a catastrophic and unjust deprivation of his rights, respectfully prays for a judgment in his favor and against the Defendants, jointly and severally where applicable, awarding the following comprehensive relief:

A. Compensatory Damages in an amount to be determined at trial, but believed to be in excess of Five Hundred Million Dollars ($500,000.000.00), for physical pain, severe emotional distress, the living nightmare he has endured, loss of dignity, reputational harm, loss of liberty, loss of property rights (including the loss of his home), the cost of past and future psychological care, legal expenses, and all other economic and non-economic losses.

B. Punitive Damages against the individual, non-judicial Defendants in an amount sufficient to punish their malicious, willful, and wanton conduct and to deter them and others from ever again engaging in such a monstrous abuse of power.

14

C.  Reasonable Attorneys' Fees and Costs pursuant to 42 U.S.C. § 1988 and the New Jersey Civil Rights Act.

D.  Pre-judgment and post-judgment interest as permitted by law.

E.  Such other and further relief as the Court deems equitable, just, and proper to restore a measure of justice to the Plaintiff.

## X.   CERTIFICATION   PURSUANT   TO   FEDERAL   RULE   OF   CIVIL PROCEDURE 11

I certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, except for: (1) the related appeal docketed as A-001279-24 in the New Jersey Appellate Division arising from the underlying Family Part matter; (2) the underlying Family Part matter itself (Docket Nos. FV-16-000272-25 and FV-16-000295-25); and (3) potentially related municipal court matters concerning the Simple Assault charge (Summons 1602 S 2024 000730) and Contempt charge (Complaint-Warrant 1602 W 2024 000732). I further certify that no other action or arbitration proceeding is contemplated. I certify that, to the best of my knowledge, the parties named herein are the only parties who should be joined in this action at this time, except potentially the Doe defendants whose identities may be discovered later.

Dated: August 10, 2025

## XI. SIGNATURE

Respectfully submitted,

01/06/2026

Richard Rebisz, Plaintiff Pro Se
173 Rowland Ave, 2nd Fl
Clifton, NJ 07012
(973) 650-1017